**In re Steven Robert MAMMEL, Debtor.**

**Bankruptcy No. 98–01184–C.**

United States Bankruptcy Court, N.D. Iowa.

June 9, 1998.

Henry E. Nathanson, Cedar Rapids, IA, for Debtor.

Carol F. Dunbar, Waterloo, IA, Chapter 13 Trustee.

### ORDER

PAUL J. KILBURG, Bankruptcy Judge.

On May 21, 1998, the above-captioned matter came on for confirmation hearing on Debtor's proposed Chapter 13 plan. Debtor was present with Attorney Henry Nathanson. The Chapter 13 Trustee, Carol Dunbar, was also present. As objections were filed, the hearing was treated as a preliminary

hearing. Objections were argued after which the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

### STATEMENT OF THE CASE

Debtor, Steven Robert Mammel, filed his Chapter 13 petition on April 22, 1998. Debtor's Schedule F (Creditors Holding Unsecured Nonpriority Claims) lists a total of $60,672.38 in unsecured claims. Included in these claims are five separate student loans:

a. Great Lakes Northstar in the amount of $8,450;

b. Mellon Bank Center in the amount of $4,962.59;

c. Norwest Bank in the amount of $16,971.52;

d. Sallie Mae in the amount of $12,875.20; and

e. Windham Professionals in the amount of $3,232.07.

These student loans, which total $46,491.38, constitute approximately three-fourths of the total unsecured debt.

Debtor filed his plan simultaneously with the Chapter 13 petition. The plan proposes to pay $70.00 per month for 36 months. Debtor estimates his total payment to unsecured creditors to be not less than 3%. The Trustee, in her brief, estimates a payment to unsecured creditors of about 3.8%. The student loan creditors were provided standard notice of the filing of the Chapter 13 bankruptcy and plan. None of these creditors appeared at the § 341 meeting, none filed an objection to the plan, and none appeared at the time of the preliminary confirmation hearing.

While no objections were filed by creditors, the Trustee objected to the plan on several grounds including the following:

The trustee objects to the provision in paragraph 3(I) of the plan which proposes to have the student loans declared dischargeable upon confirmation of the plan. Debtor must instead file an adversary proceeding in this case against each student loan creditor under Bankruptcy Rule 7001 to determine a debt's dischargeability.

At the time of the confirmation hearing on May 21, 1998, all objections except for the foregoing were resolved. The Trustee indicated a willingness to withdraw the objection to Debtor's proposed plan treatment of the student loans. The Court, however, indicated that it wished further briefs on this issue and allowed the Trustee and Debtor's counsel a period of two weeks within which to file briefs. The Chapter 13 Trustee and counsel for Debtor have timely filed briefs.

The controversy preventing confirmation at the preliminary confirmation hearing involves inclusion in Debtor's Chapter 13 plan of the following provision:

Pursuant to 11 U.S.C. § 523(a)(8) excepting the government guaranteed education loans from discharge will impose an undue hardship on the debtor and debtor's dependents. Confirmation of debtor's plan shall constitute a finding to that effect and that said debts are dischargeable.

The specific issue for resolution is whether it is appropriate to confirm a plan which contains this provision.

### DISCUSSION

█ The Trustee withdrew her objection at the time of the confirmation hearing but has reasserted it in her brief. Whether the Trustee has filed an objection or not, the Court has the independent right and duty to review proposed Chapter 13 plans for compliance with the Code. Therefore, whether or not an objection is presently lodged in this case, the Court retains the authority to review this plan and deny confirmation if it fails to comply with the confirmation standards of the Code. *In re Northrup,* 141 B.R. 171, 173 (N.D.Iowa 1991).

Debtor, at the time of confirmation and in his brief, relies primarily upon *In re Andersen,* 215 B.R. 792 (10th Cir. BAP 1998). Debtor asserts that *Andersen* stands for the proposition that if a lender is accorded due process in the confirmation process, a plan provision similar to that proposed here constitutes a binding res judicata determination. This opinion is generally consistent with the holding of *Great Lakes Higher Education Corp. v. Pardee,* 218 B.R. 916, 922 (9th Cir. BAP 1998), which concludes that a Chapter

13 plan is res judicata as to all issues that could have or should have been litigated at the confirmation hearing.

The results obtained in these cases are based on principles of res judicata which bar further litigation post-confirmation under 11 U.S.C. § 1327(a). Section 1327(a) states:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

Reviewing courts have been troubled by the tension created by inclusion of arguably inappropriate plan provisions and the need for finality in confirmed plan. One court has noted that:

> [t]he true extent of the res judicata effect of a Chapter 13 confirmation order entered pursuant to § 1327(a) is, however, a complex and thorny conundrum which has vexed courts and parties, and on which there is a broad spectrum of diverse opinion.

*In re Strong,* 203 B.R. 105, 113 (Bankr. N.D.Ill.1996).

A number of circuit courts have addressed the § 1327 issue. *See, e.g., In re Linkous,* 990 F.2d 160 (4th Cir.1993); *In re Howard,* 972 F.2d 639 (5th Cir.1992); *In re Pence,* 905 F.2d 1107 (7th Cir.1990); *In re Simmons,* 765 F.2d 547 (5th Cir.1985); *In re Tarnow,* 749 F.2d 464 (7th Cir.1984). The Eighth Circuit Court of Appeals has not ruled on the issue in a Chapter 13 case though it has discussed somewhat similar issues in *In re Be-Mac Transport Co.,* 83 F.3d 1020 (8th Cir.1996) and in *Harmon v. United States,* 101 F.3d 574 (8th Cir.1996); *see also In re Harnish,* No. 97–02185–C (Bankr.N.D.Iowa June 2, 1998).

Most courts ultimately defer to the doctrine of res judicata because of the compelling need for finality in confirmed plans. They, therefore, enforce offending plan provisions even though acknowledging that a provision may be contrary to the Code. This is the majority view. *Northrup,* 141 B.R. at 173. This view, however, is not universally held. *See Pardee,* 218 B.R. at 927 (Klein, J., dissenting).

■ Fortunately, the potentially troublesome provision in this case was identified before confirmation. This allows an unrestricted examination of the merits of the provision unfettered by res judicata issues. While unnecessary to resolve the res judicata issue in this opinion, it was discussed in general terms because of its relevance to the impact this provision will have if this plan is confirmed. The issue is solely whether this plan should be confirmed while containing this provision. For the reasons set out hereafter, the Court finds this provision objectionable in numerous respects.

First, confirmation of Debtor's plan will allow immediate discharge of a category of debts without the necessity of completing plan payments. This is inconsistent with § 1328 of the Code which states:

> § 1328. Discharge
>
> (a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
>
> . . .
>
> (2) of the kind specified in paragraph (5), (8), or (9) of sections 523(a) or 523(a)(9) of this title;

Section 1328(a)(2).

To summarize this provision, a debtor is entitled to the entry of a discharge of all debts provided for by the plan after the plan is completed with certain exceptions discussed later in this opinion. The discharge provision proposed by Debtor is inconsistent with § 1328 which provides for a discharge only upon completion of all plan payments. The Court in *In re Key,* 128 B.R. 742, 743 (Bankr.S.D.Ohio 1991) stated as follows:

> Section 1328 provides that the court shall grant a discharge, after completion of all payments under the plan, except for those debts specifically excepted, i.e., student loans, alimony and child support, debts

arising from operation of a motor vehicle while legally intoxicated, restitution included in a sentence resulting from a criminal conviction, and those debts arising from certain long term obligations. There is no provision that would grant a discharge upon confirmation of a Chapter 13 plan even for those debts not specifically excepted.

If Debtor's plan is confirmed, Debtor will be granted a discharge from the student loans immediately upon confirmation. This would allow discharge of the student loan debt at the beginning of the plan while the remainder would only be discharged upon completion. Debtor could immediately convert to a Chapter 7, claim applicability of the doctrine of res judicata and argue that the educational loans are discharged. If successful, the loans would be discharged without the necessity of an adversary proceeding. This result is inconsistent with the intent of Congress when § 1328 was drafted.

Second, allowing discharge of these debts through the confirmation process defeats the adversary requirements for determining dischargeability. The Code provides in § 523 that:

§ 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1128(a), 1128(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution, or for any obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose a undue hardship on the debtor and the debtor's dependents;

Obtaining a hardship discharge under the provisions of § 523(a)(8) requires the filing of an adversary complaint under Federal Bankruptcy Rules 4007(c) and 7001(6). Debtor, through counsel, asserts that filing of an adversary complaint would be expensive and Debtor cannot afford to pursue this procedure. Obviously, pursuing a hardship discharge through an adversary complaint can be costly. The requirements for resolving dischargeability issues, however, are defined by the Code and Rules in a manner best suited to provide the appropriate forum in an adversarial format within which to provide due process and procedural safeguards to all parties. The shortcut proposed by Debtor undermines that process and renders superfluous those rules relating to adversary complaints.

Third, Debtor seeks to have the debts declared dischargeable without satisfying the evidentiary elements of § 523(a)(8). This section allows a hardship discharge under only two circumstances. Debtor must establish that (1) the debt became due more than seven years prior to the filing of the bankruptcy petition or (2) repayment of the loan would impose an undue hardship. Debtor does not claim that a factual basis exists to have these claims discharged on either of the two statutory grounds. He asserts only that the act of confirmation of the plan by itself would constitute such a ground. Approving this provision would, in effect, judicially create a third method of obtaining a discharge.

Fourth, Debtor relies on the general provisions of 11 U.S.C. § 1322(b)(10) to assert that flexible plan drafting is allowed by the Code. This Code provision provides:

Subject to subsections (a) and (c) of this section, the plan may include any other appropriate provision not inconsistent with this title.

Debtor also relies on 11 U.S.C. § 1322(b)(2) which provides that a debtor may "modify the rights of holders . . . of unsecured claims . . .".

■ Debtor argues that § 1322(b)(10) of the Code allows creative plan formulation

and wide latitude in the formulation of a Chapter 13 plan. He further argues that through this plan process, the rights of unsecured creditors, such as the student loan creditors, may have their rights altered. It is correct that § 1322 was included in the Code to allow flexibility in plan treatment. Some commentators view these provisions broadly and feel they provide an opportunity for the artful debtor to propose a plan with "unique features". 4 William L. Norton, Jr., *Norton Bankruptcy Law and Practice,* § 121:13 (2d ed.1997). Other courts hold a less appreciative view of this type of provision. The dissent held in *Pardee,* 218 B.R. at 927, "An affirmance in this appeal would license ambushes and would function as judicial legislation substituting our judgment for that of Congress."

While § 1322(b)(10) allows flexibility in the treatment of complex obligations, it is intended to do so within the parameters of more specific Code provisions. It does not provide a method to negate other Code provisions. Section 1328 excepts student loans from discharge even after completion of all plan payments except under limited circumstances defined in 11 U.S.C. § 523(a)(8). To allow a hardship discharge in the manner proposed by Debtor would be to negate the requirements of 523(a)(8). This is impermissible.

Fifth, Debtor's plan may be construed to unfairly discriminate against the class of student loan creditors. Section 1322(b)(1) provides that a debtor may "designate a class or classes of unsecured claims, as provided in § 1122 of this title but may not discriminate unfairly against any class so designated." Most cases which propose this type of plan treatment tender payment of a part of the obligation along with other unsecured creditors on an equal basis. Debtor's position here is less clear. It appears that the plan includes the claims of the student loan creditors in the plan payments to unsecured creditors based on the estimated amount of unsecured claims. However, there is no precise language in the plan to that effect and the provision under discussion contradicts such a conclusion.

If the student loans are dischargeable immediately upon confirmation, no reason exists for Debtor to pay a pro rata share of these claims. If true, this class of claims is being treated unfairly because other unsecured creditors are being offered 3.8% toward their unsecured claims while the student loan creditors are being offered nothing. Debtor may arguably take the position that this treatment does not constitute unfair discrimination because the student loans are being discharged. If Debtor does so, it reveals the deficiency in this plan in that Debtor is not treating the claims of the various student loan creditors fairly but rather is proposing this provision solely to defeat their claims.

Sixth, much of Debtor's cited authority was decided on res judicata principles. As res judicata does not apply in this case, Debtor argues that it is nevertheless appropriate to confirm this plan since the creditors were given notice, due process, and an opportunity to be heard. He argues, in essence, that they should be defaulted and the plan confirmed. However, even though no creditor has appeared to object, the Court retains an independent obligation to examine plan provisions and ensure that they comply with the Code. *Northrup,* 141 B.R. at 173. Also, as the Trustee correctly points out, significant due process issues exist concerning the rights of these creditors when a plan provision such as this is proposed. While Debtor lists five separate student loans, none are specifically named in the plan provision discharging the student loan debt. It is well known that many times these loans are transferred to other agencies for collection and notice to student loan creditors is always problematic. There can be no assurance that these creditors received sufficient notice in this case to satisfy due process.

These student loan creditors have until August of 1998 within which to file claims. Under ordinary circumstances, it is unnecessary for student loan creditors to file a claim as they are entitled to rely on the nondischargeability provisions of 11 U.S.C. § 523(a)(8). For these reasons, it is inappropriate to confirm this plan by default, partic-

ularly when confirmation irrevocably binds these creditors to this provision.

■ Finally, all of the foregoing ultimately coalesces into an issue of good faith. The procedure proposed by Debtor in this case is convenient, but ultimately unfair. If approved, Debtor will eliminate 75% of his unsecured debt through a procedure which is not recognized in the Code or Rules. Approving this procedure allows Debtor to change the law upon which issues of dischargeability are determined. Under the Code, Debtor has the burden to raise the issue of dischargeability. Allowing this provision would shift the burden to the student loan creditors. It would require them to appear at the confirmation hearing and raise the issue or lose the rights preserved to them by the Code. It is inappropriate to bind these creditors to a determination which unilaterally changes the rules. This is particularly true when a default is sought in a proceeding in which the student loan creditors may well have no reasonable expectation that they were required to participate to preserve their rights.

■ The philosophy of Chapter 13 is to allow a debtor in good faith, to pay legitimate obligations on a pro rata basis. The provision proposed by Debtor is not only contrary to the provisions of the Code but also to its philosophy. The purpose of the provision is not to pay a proportionate percentage of debt but rather to avoid payment completely. This constitutes a trap for unwary creditors particularly where Debtor has made no showing that he would be entitled to a hardship discharge if put to his proof.

Ultimately, this type of provision trivializes the entire process and reduces it to a game of chance. If Debtor can obtain confirmation before the creditors, the Court, or the Trustee identify such a provision, the objectionable plan provision is elevated to a status beyond challenge. It is the opinion of this Court that this type of plan provision should be discouraged rather than encouraged under the guise of creativity.

**WHEREFORE,** for all of the reasons set forth herein, the objection of the Chapter 13 Trustee to the confirmation of Debtor's plan is SUSTAINED because the specific provision proposed by Debtor prevents this plan from being confirmed.

**FURTHER,** Debtor is granted 14 days from the date of this order within which to amend the plan to satisfy the Trustee's objection. If no amendment is filed within that time period, this case will be dismissed without further notice or hearing.