**In re Ayanna FEARS, Kenneth and Glenda Thomas, James and Pamela Thompson, Debtors.**

**Nos. 98–35869, 97–33777, 97–31355.**

United States Bankruptcy Court, W.D. Kentucky.

March 31, 2000.

---

Richard A. Schwartz, Louisville, KY, for Debtor, Fears.

David M. Cantor, Jeffrey A. Gorski, Louisville, KY, for Debtors, Thompson.

Wallace H. Spalding, III, Louisville, KY, for Debtors, Thomas.

John S. Egan, Edward M. King, Brown, Todd & Heyburn, Louisville, KY, for Educational Credit Management Corporation.

Diana L. Barber, Frankfort, KY, for KHEAA.

Thomas L. Canary, Jr., Mapother & Mapother, Louisville, KY, for USA Funds.

Joseph Golden, Louisville, KY, Assistant U.S. Trustee.

William W. Lawrence, Louisville, KY, Trustee for Debtors, Thomas & Fears.

Michael E. Wheatley, Louisville, KY, Trustee for Debtors, Thompson.

## *MEMORANDUM*

DAVID T. STOSBERG, Chief Judge.

This matter is before the court on the debtors' objections to collection costs added by Educational Credit Management Corporation ("ECMC") and Kentucky Higher Education Assistance Authority ("KHEAA") to the student loan claims in the above chapter 13 cases. United Student Aid Funds, Inc. ("USA Funds") filed an amicus curiae brief and participated in the consolidated hearing before this court on November 30, 1999, supporting the positions espoused by ECMC and KHEAA. The issue for the court to decide is whether collection costs are properly added to student loan claims in chapter 13 cases. For the reasons that follow, the court has disallowed the collection costs added to the student loan claims of KHEAA and ECMC in these chapter 13 cases.

### *Facts*

ECMC is the student loan creditor in the Thomas and Thompson chapter 13 bankruptcy cases. In Thomas, ECMC's filed a claim totaling $9,115.13, which includes $1,823.03 in collection costs, computed by multiplying 25% by the balance of principal and interest due on the student loan of $7,292.10. In Thompson, ECMC filed a claim totaling $2,516.14, of which $383.76 is collection costs, representing 18% of the balance of principal and interest on the loan.

KHEAA is the student loan creditor in the Fears chapter 13 bankruptcy case. KHEAA filed a total claim of $36,295.87. $28,092.17 of its claim is principal, $944.50 is interest, and $7,259.20 is the collection costs, calculated by multiplying 25% by the

principal and interest balance on the student loan.

On November 30, 1999, the court held a hearing and heard testimony regarding these agencies' application of the formula-based collection costs charged to all student loan debtors. The proof demonstrated no nexus between the amount charged as "collection costs" and actual efforts expended by the creditors to collect these debts. According to the testimony, the guaranty agencies apply the formula set forth in 34 C.F.R. § 682.410(b)(2) to arrive at a percentage that represents the lesser of their average costs in collecting student loan debts, or the 25% figure charged by the U.S. Dept. of Education where it is the guarantor of a student loan note. Representatives of ECMC and KHEAA testified that a percentage-based collection cost is charged to a defaulted loan regardless if the loan has been referred to a collection agency. (Transcript of Proceedings dated November 30, 1999, page 118–119). KHEAA's witness testified that the collection charge is automatically assessed on the 71st day after the 270 day grace period following a default in payment. (Transcript of Proceedings dated November 30, 1999, page 110–112; 121–131). Neither ECMC nor KHEAA presented proof of collection costs incurred to collect the particular student loan debts in these cases.

The debtors do not dispute that they agreed, under their contracts, to pay reasonable fees and costs associated with collection of their student loans in the event of a default. The question is whether collection costs added to unsecured student loan claims are allowable under the Bankruptcy Code.

### Discussion

■ The student loan creditors argue that assessing collection costs to the debtor is mandated pursuant to Section 1091a, part (b), of the Higher Education Act. 20 U.S.C. § 1091a(b) provides:

(b) Assessment of costs and other charges.

Notwithstanding any provision of State Law to the contrary—

(1) A borrower who has defaulted on a loan made under this sub-chapter and part C of sub-chapter I of chapter 34 of Title 42 shall be required to pay, in addition to other charges specified in this sub-chapter and part C of sub-chapter I of chapter 34 of Title 42, reasonable collection costs; and

(2) in collecting any obligation arising from a loan made under part B of this sub-chapter, a guaranty agency or the Secretary shall not be subject to a defense raised by any borrower based on a claim of infancy.

20 U.S.C. § 1091a. The United States Department of Education also published federal regulations prescribing the calculation of collection costs for defaulting student loan borrowers. The regulation states that "the guaranty agency shall charge a borrower an amount equal to reasonable costs incurred by the agency in collecting a loan on which the agency has paid a default or bankruptcy claim." 34 C.F.R. § 682.410(b)(2). It further gives the agency the instruction to choose between the lesser of two options. The agency is permitted to charge the lesser of (1) the amount devised by the formula in 34 C.F.R. § 30.60, which is an average collection cost of all loans held by a particular guaranty agency, or (2) 25% of the balance of principal and interest due on the loan. *Id.* Finally, this regulation permits a guaranty agency to impose collection charges "whether or not provided for in the borrower's promissory note."

Creditor ECMC cites *In re Featherston,* 238 B.R. 377 (Bankr.S.D.Ohio 1999) as a case that allowed reasonable collections costs as part of the student loan claim. *Id.* at 380. However, this case is distinguishable on its facts. In *Featherston,* the debtor included a provision in the chapter 13 plan that proposed to treat USA Funds' debt as an unsecured claim, the balance of which would be discharged upon comple-

tion of the plan because payment of the debt in full would cause the debtor an "undue hardship." *Id.* at 378. The bankruptcy court specifically held that in order to discharge any portion of a student loan debt as creating a hardship on the debtor, the debtor must file an adversary proceeding. *Id.* at 381. In *Featherston,* the portion of the claim that the debtor sought to discharge through the plan provision represented $16,085.45 in collection costs, which the debtor characterized as a "default penalty." *Id.* The bankruptcy court recognized the "default penalty provisions, meant to penalize a debtor rather than repay the loan or reimburse a creditor for costs," fall outside the discharge exception for student loans under § 523(a)(8). *Id.* (citing, *Rural Kentucky Medical Scholarship Fund, Inc. v. Lipps (In re Lipps),* 79 B.R. 67, 70 (Bankr.M.D.Fla.1987)).

In the cases at bar, the debtors have not requested that the collection costs be discharged through a plan provision, nor that the costs fall under the hardship discharge of § 523(a)(8). Procedurally, the debtors objected to the claims of ECMC and KHEAA based on the arbitrary application of a percentage-based collection cost imposed in every case where the student loan debtor has defaulted prepetition.

Our analysis begins and ends with the Bankruptcy Code. Student loan obligations are generally non-dischargeable in bankruptcy under 11 U.S.C. § 523(a)(8). This section provides:

(a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt—

(8)for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8).

No party to this action disputes that the principle and interest associated with a student loan is non-dischargeable under 11 U.S.C. § 523(a)(8) absent proof by a debtor that payment would cause an undue hardship. The precise issue for the court is whether the student loan creditors can add collection costs to their unsecured chapter 13 bankruptcy claims.

The Bankruptcy Code's treatment of secured versus unsecured claims provides the answer to this question. The treatment of secured claims in bankruptcy is set forth in 11 U.S.C. § 506. Subsection (a) of section 506 defines "secured claims" as "an allowed claim of a creditor secured by a lien on property in which the estate has an interest, ..." Subsection (b) is concerned with oversecured claims, and is the Code section that specifically provides for recovery of fees and costs under certain specified conditions. Section 506(b) provides:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and *any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.* (Emphasis added).

Thus, Congress was clear in its definition of what constitutes a secured claim and *when* interest, fees and other costs are allowed to the holders of oversecured claims. As the Supreme Court stated, "as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240–41, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). In *Ron Pair,* the Court thoroughly analyzed section 506 of the Bankruptcy

Code by referring to the "plain meaning" of the legislation. *Id.* at 242, 109 S.Ct. 1026. The Court concluded that Congress was clear in enacting the bankruptcy laws that reasonable attorney fees, costs and other charges, such as collection costs, are only allowable where they are provided for in the agreement that gives rise to the claim. *Id.* at 241, 109 S.Ct. 1026.

■ In student loan cases, generally the loan agreement provides for collection charges in the event of default by the borrower. However, student loans are not *secured* claims; they are *unsecured* claims and therefore, not entitled to additional fees and costs. Section 506(b) is clear in its directive that only in cases of *secured* claims, where the value of the collateral exceeds the amount of the lien, may a creditor add reasonable fees and charges to its claim. Conversely, the Code does not provide such treatment to *unsecured* claims. Where the statute's language is "plain," the court's inquiry should end and the court's "sole function ... is to enforce it according to its terms." *Id.* at 241, 109 S.Ct. 1026.

In the *Ron Pair* case, the Supreme Court commented on other cases where statutory language conflicted with a "significant state or federal interest." *Id.* at 245, 109 S.Ct. 1026. For example, in *Midlantic National Bank v. New Jersey Dept. of Environmental Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), the Court recognized that in the area of environmental law where Congress has repeatedly emphasized its goal of protecting the environment, deference to nonbankruptcy law in determining statutory intent was appropriate. *Ron Pair,* 489 U.S. at 244, 109 S.Ct. 1026. However, with respect to section 506, the Court expressed its strong feeling that the language was "clearer than the language at issue in *Midlantic,*" and that giving the language of the statute its natural meaning did not conflict with any "significant state or federal interest, nor with any other aspect of the Code." *Id.* at 245, 109 S.Ct. 1026.

The Supreme Court's interpretation of section 506 is clear—only over*secured* claims are subject to payment of interest, fees and costs. We therefore hold that *unsecured* student loan claims are not subject to the imposition of attorney fees and other charges designated as collection costs. The Bankruptcy Code governs our decision. Therefore, we decline to comment on whether the regulation supporting the imposition of percentage-based collection costs on defaulted student loans is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

Our holding today is consistent with the philosophy embedded in the Bankruptcy Code of providing all debtors with the opportunity for a fresh start "while not offending the policies underlying the Bankruptcy Code provisions that require good faith efforts to maximize income and attempt repayment of student loans." *In re Fox,* 189 B.R. 115, 120 (Bankr.N.D.Ohio 1995). This decision is consistent with the principle of rewarding the good faith efforts of debtors who opt to pay their creditors through a chapter 13 plan. It is well-established that chapter 13 debtors may separately classify student loan debts which are nondischargeable under § 523(a)(8). Any balance remaining on the loan at the conclusion of the plan survives the chapter 13 discharge. *In re Girard,* 243 B.R. 894, 897 (Bankr.M.D.Ala.1999). However, to saddle the good faith chapter 13 debtor with an additional collection cost would in many cases create an undue hardship that may otherwise not exist. *See Dolph v. Pennsylvania Higher Educ. Assistance Agency (In re Dolph),* 215 B.R. 832, 836–37 (6th Cir. BAP 1998) (discussing the test for determining undue hardship, citing *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman),* 25 F.3d 356 (6th Cir.1994)).

### Conclusion

KHEAA and ECMC, student loan creditors, are the holders of unsecured claims and therefore not entitled to fees and costs. The court has entered an order this same date disallowing the collection costs added to these claims.