In re Ayanna FEARS, Debtor.

Kentucky Higher Education Assistance Authority, Appellant,

v.

Ayanna M. Fears, Appellee.

In re James B. Thompson, Pamela G. Thompson, Debtors.

Educational Credit Management Corporation, Appellant,

v.

James B. and Pamela G. Thompson, Appellees.

Civ.A. Nos. 3:00–CV–364–S, 00–CV–406–S.
Bankruptcy Nos. 98–35869(13), 97–31355(13).

United States District Court,
W.D. Kentucky,
Louisville Division.

Feb. 6, 2001.

Diana L. Barber, Higher Education Assistance Authority, Frankfort, KY, for Kentucky Higher Education Assistance Authority.

Richard Alan Schwartz, Kruger, Schwartz & Morreau, Louisville, KY, for Ayanna M. Fears.

Joseph J. Golden, Louisville, KY, Trustee in Bankruptcy.

John S. Egan, Edward M. King, Frost, Brown & Todd, Louisville, KY, for Educational Credit Management Corporation.

David Marcus Cantor, Seiller & Handmaker, Louisville, KY, for James B. Thompson and Pamela G. Thompson.

### MEMORANDUM OPINION

SIMPSON, Chief Judge.

The Appellants appeal orders of the bankruptcy court denying, in part, their proofs of claim. They contend that they were denied improperly the right to include collection fees in their claims. For the reasons set forth below, we reverse and remand.

### I FACTS AND PROCEDURAL HISTORY

The following facts are drawn from the opinion of the bankruptcy court and are undisputed for purposes of this appeal.

In the Chapter 13 bankruptcy case of James and Pamela Thompson, Educational Credit Management Corporation ("ECMC"), a student loan creditor, filed proof of an unsecured claim which included a $383.76 charge for collection costs. In the Chapter 13 bankruptcy case of Ayanna Fears, Kentucky Higher Education Assistance Authority ("KHEAA"), a student loan creditor, filed proof of an unsecured claim which included a $7,259.20 charge for collection costs. The collection costs claimed in each case are formulaic, having been calculated as a percentage of the principal and interest due. There is no indication in the record of whether any actual collection costs were incurred, or if so, their amount. There is no dispute as to the accuracy of the calculations or the regulatory basis for the amounts claimed.

The debtors filed objections to the claims to the extent that they included charges for collection costs, and the bankruptcy court held a consolidated hearing on the objections. The court then issued an opinion and order which found in favor of the debtors. It characterized the issue as "whether collection costs added to unsecured student loan claims are allowable under the Bankruptcy Code," and answered that question in the negative based upon its interpretation of 11 U.S.C. § 506(b). *In re Fears*, 247 B.R. 219, 221–23 (Bankr.W.D.Ky.2000). ECMC and KHEAA appeal from this decision.

The precise question before us, then, is whether the bankruptcy court misconstrued the effect of § 506(b) on unsecured claims.

### II DISCUSSION

We hear this appeal pursuant to 28 U.S.C. § 158(a). The bankruptcy court's interpretation of the effect of § 506(b) on claims for prepetition costs is a legal conclusion which is reviewed in this Court *de novo*. *In re Batie*, 995 F.2d 85, 88 (6th Cir.1993).

#### A. Claims under the Bankruptcy Code

When the language of a statute is plain, "the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). Thus, in order to determine whether the

creditors are entitled to collection costs, we first look to the language of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*

The Bankruptcy Code defines a 'claim' as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; . . . ." § 101(5)(A). According to Congress, "this broadest possible definition . . . contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." H.R.Rep. No.95–989, at 309 (1977); S.Rep. No. 95–595, at 22 (1978), U.S.Code Cong. & Admin.News 1978, at 5787, 5808, 6266. Thus, a bankruptcy claim may include charges for collection costs and attorney fees. *In re Byrd,* 192 B.R. 917, 919 (Bankr.E.D.Tenn. 1996).

Section 501(a) of the Bankruptcy Code allows a creditor to file a proof of claim which may entitle it to a portion of the bankruptcy estate. Once filed, the Bankruptcy Code deems this claim to be "allowed" unless a party objects. § 502(a). If, as in the cases before us, the debtor objects to the proof of claim, then the bankruptcy court must, after notice and a hearing, determine the amount of the claim "as of the date of the filing of the petition." § 502(b). The court "shall allow" such claim except in certain enumerated circumstances, none of which apply to this situation. *Id.*

## B. § 506(b)

The bankruptcy court relied on § 506(b) in declining to allow the collection costs as part of the unsecured claims. It reasoned that, because § 506(b) allows an oversecured claim to include reasonable fees, costs, and charges as part of the secured claim, by implication, such fees, costs, and charges cannot be included in an unsecured creditor's proof of claim. Specifically, the court wrote, "Section 506(b) is clear in its directive that only in cases of se-

cured claims, where the value of the collateral exceeds the amount of the lien, may a creditor add reasonable fees and charges to its claim. Conversely, the [Bankruptcy] Code does not provide such treatment to unsecured claims." *Fears,* 247 B.R. at 223.

We believe the bankruptcy court misconstrued the impact of § 506(b) on unsecured creditors' claims for fees, costs, and charges. Our analysis begins with the language of § 506(b), which provides:

> To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

■ This section does not address the extent to which an unsecured creditor has a claim for interest, fees, costs, and charges. Rather, it grants secured status to claims for those items to the extent that there is oversecurity to cover them.

No published cases have addressed this precise issue. However, several courts have addressed the interplay between §§ 502 and 506(b) on tangential issues. One court noted, "Those courts which have examined § 506(b) in conjunction with § 502 have concluded that § 506(b) does not create additional exceptions to the allowance of claims; rather it only provides for the classification of allowed claims as secured or unsecured." *In re Tricca,* 196 B.R. 214, 219 (Bankr.D.Mass.1996) (citations omitted). In other words, § 502(b) provides a list of exceptions to the Bankruptcy Code's broad allowance of claims. By contrast, § 506(b) only provides the standards for determining the extent to which claims for interest and reasonable fees, costs, and charges can be recovered from property of the estate in which the creditor has a perfected security interest.

This is consistent with the reasoning of other courts which have considered the

374

relationship between §§ 502 and 506. For example, the court in *Byrd* held that a claim for post-petition attorney fees was allowable as an unsecured claim even though the creditor could not recover them as a secured claim under § 506(b). The court based its conclusion on the fact that § 502(b) did not prohibit recovery of these types of fees and that § 506(b) did not operate to disallow unsecured claims. *Byrd*, 192 B.R. at 919. *See also Keaton v. Boatmen's Bank of Tennessee*, 212 B.R. 587, 592 (E.D.Tenn.1997), *vacated on grounds of mootness by* 1998 WL 228123, 1998 U.S.App. LEXIS 8999 (6th Cir. 1998)("The obvious structure of the Bankruptcy Code and the plain language of § 506 reveal that § 506(b) does not ... allow attorney fee claims of oversecured creditors; it makes those claims *secured* claims to the extent of the excess collateral.")(emphasis in original).

Although some courts have read § 506(b) to limit unsecured claims in various ways, *see, e.g., In re Sakowitz, Inc.,* 110 B.R. 268 (Bankr.S.D.Tex.1989), none has held that it prevents a creditor from including in its unsecured claim reasonable fees, costs, and charges assessed as of the date of the filing of the petition. *See* James Gadsden & Seigo Yamasaki, *Recovery of Attorney Fees as an Unsecured Claim,* 114 Banking L.J. 594, 595 (1997)("The cases recognize that a creditor has an allowable claim for the attorney fees incurred prior to the filing of the bankruptcy case. The split has come in the treatment of the fees incurred thereafter.")(footnote omitted).

The reasoning in *Tricca* and *Byrd* is persuasive. We conclude that § 506(b) does not preclude an unsecured creditor's claim for reasonable fees, costs, and charges. Therefore, we hold that the bankruptcy court erred in not allowing those portions of the creditors' claims comprised of collection costs.

### III  *CONCLUSION*

For the reasons stated above, we find that the bankruptcy court improperly concluded that 11 U.S.C. § 506(b) prevents the allowance of collection fees in an unsecured proof of claim. Because the court relied solely upon § 506(b) in its decision, we need not address any of the other issues involved or arguments advanced in this appeal. The bankruptcy court has the authority, under 11 U.S.C. § 502(b), to determine the amount of each of these claims and to address their reasonableness. In a separate order entered this date, we reverse the decision of the bankruptcy court and remand for proceedings not inconsistent with this opinion.